**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: ALICE DIANE LUCAS, | ) | Case No. 79-00018 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DIANE L. CROCKETT, fka Alice Diane Lucas, | ) | Adv. No. 10-06104 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Educational Credit Management Corporation, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM**

This matter comes before the Court on a complaint by Diane L. Crockett, formerly known as Alice Diane Lucas ("the Plaintiff"), which complaint seeks sanctions for an alleged violation of the discharge injunction by the Educational Credit Management Corporation ("the Defendant"). Judgment shall be entered in favor of the Defendant.

1

*Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

The Plaintiff is the debtor in the above styled bankruptcy case. The Defendant is a Federal Family Education Loan Program ("FFELP") student loan guaranty agency governed by the Higher Education Act and regulated by 34 C.F.R. § 682. The Defendant provides services to the United States Department of Education pursuant to the FFELP, including accepting transfer of title to certain student loan accounts from the Department of Education in instances where the borrower has filed a bankruptcy petition.

In or about February of 1975, the Plaintiff obtained a student loan ("the Loan") that was federally insured or guaranteed under the Higher Education Act. The Loan gave rise to a debt ("the Debt"). The proceeds were disbursed in due course. On January 22, 1979, the Plaintiff filed a petition under chapter XIII of the Bankruptcy Act of 1898 ("the 1898 Act") initiating the above-styled case ("the 1979 Case")[1]. The 1979 Case was eventually converted to chapter VII and an order of discharge ("the Discharge Order") was entered in June 28, 1983. The case was closed on February 7, 1985.

In late May or early June of 1998, the Defendant acquired title to the Debt. The Defendant was apparently aware of the 1979 Case, but had no knowledge of the particulars of the case.

---

[1] The case was designated as Case No. 79-00018 by the Clerk of the Bankruptcy Court.

2

Before attempting to collect the Debt, the Defendant attempted to ascertain whether it was enjoined from collecting the Debt. On August 4, 1998, the Defendant mailed a letter ("the 1998 Letter") to Plaintiff. While the original of the 1998 Letter is not now available, a copy of the template employed at the time to create such letters was admitted into evidence.[2] The template provides in part:

> Be advised that ECMC records indicate that you had filed a petition for bankruptcy. It is necessary that we receive a copy of your bankruptcy discharge/dismissal order to determine the status of your debt to the Federal Government
>
> Please return this letter along with the requested documents within 30 days of the date of this letter to the following address: [Address provided.]

The template also informs the debtor that the Debt may not have been discharged in bankruptcy even if the debtor received a discharge. The Plaintiff did not respond to the 1998 Letter.[3]

On June 13, 2002, the Defendant conducted a search of the LEXIS/NEXIS database in an attempt to ascertain the disposition of the 1979 Case, but the search revealed no such information. On January 21, 2004, the Defendant conducted a search to determine whether the 1979 Case was still active, whether it had been dismissed, and whether a discharge order had been entered. The Defendant was unable to find any information regarding the 1979 Case and, consequently, routed the account to the collections department.

The Defendant first began efforts to collect the Debt in August of 2004. The collection efforts included phone calls. When she received phone calls, the Plaintiff asserted that she did not owe the Debt because it was discharged by the Discharge Order in 1983. According to the Plaintiff,

---

[2] See Exhibit B.

[3] The records of ECMC do not indicate that the letter was ever returned by the post office or that the Plaintiff responded to it. See Affidavit of Kerry Klisch. The Plaintiff did not assert that she responded to the letter.

3

the phone calls ceased at some time in 2005.

On August 10, 2004, the Defendant sent the Plaintiff a loan statement ("the Loan Statement")[4] notifying the Plaintiff that it intended to offset her Federal Income Tax Refund. Attached to the Loan Statement was a "Request for Review" which asked the Plaintiff to select from a list of provided reasons if she wished to contest the offset of her Federal Income Tax Refund. Included in the list or reasons was: "This loan was discharged in bankruptcy." The Request for Review offered a hearing concerning the Plaintiff's account through a review of the documentary record, on the telephone, or in person. The Plaintiff did not return the Request for Review to the Defendant.

In or about March of 2005, Linda Hall, a non-attorney friend of the Plaintiff and former employee of the Bankruptcy Clerk's office sent a letter to the Defendant, evidently at the direction of the Plaintiff. The letter asserted that the Plaintiff's debt was discharged because the case was filed during an ten-month period of time ("the Gap Period") during which student loan debts were not excepted from the discharge order.

On April 8, 2005, Curtis P. Zaun, Senior Counsel for the Defendant, responded to the letter from Ms. Hall. In his letter ("the Zaun Letter") he explained to the Plaintiff that student loans during the Gap Period were presumptively excepted from discharge and that an opinion, Conn. Student Loan Found. v. Southard (In re Southard), 2 B.R. 124 (Bankr. W.D.Va. 1981), had issued from a Bankruptcy Court in the Western District of Virginia that held that student loan debts were not discharged even if the petition were filed during the Gap Period. The Plaintiff did not respond to the Zaun Letter.

---

[4] See Exhibit D.

On March 21, 2006, the Defendant sent the Plaintiff a "Final Notice" and began collection efforts. On March 24, 2006, the Department of the Treasury offset the Plaintiff's tax refund in the amount of $824.91 and forwarded those funds to the Defendant. On April 12, 2006, the Defendant mailed the Plaintiff a "Notice Prior to Wage Withholding" which included information on how to request a hearing to appeal the wage withholding and a "Request for Hearing or Exemption" form.[5] The Plaintiff did not return the form or otherwise request a hearing.

On August 4, 2006, an Order of Withholding from Earnings issued garnishing the Debtor's wages pursuant to Public Law 102-164, codified at 20 U.S.C. § 1095a.

In December of 2006, the Plaintiff sought the advice of an attorney ("Plaintiff's Prior Counsel"). On December 26, 2006, the Defendant received a letter from the Plaintiff's Prior Counsel. On February 13, 2007, the Defendant mailed an administrative wage garnishment hearing request package with forms to Plaintiff's Prior Counsel. Neither the Plaintiff nor Plaintiff's Prior Counsel returned the forms to the Defendant.

On May 18, 2007, the Defendant received a copy of the Plaintiff's motion to reopen the case. The Defendant immediately ceased all collection efforts. On June 26, 2007, the Plaintiff filed the above-styled adversary complaint seeking a declaration that the Debt was discharged by order entered in the 1978 case. This Court filed a judgment granting her request. The judgment was based on the conclusion that the discharge orders that issued in bankruptcy cases that were filed between November 6, 1978, and August 14, 1979, discharged all debts arising from governmentally-insured student loans. The judgment was affirmed after the Defendant appealed the judgment to the United States District Court for the Western District of Virginia.

---

[5] See Exhibit I.

The Defendant has refunded all collected monies to the Plaintiff and marked the Debt as "discharged" on its books.

On August 26, 2010, the Plaintiff filed the above-styled complaint for sanctions against the Defendant based on alleged violation of the discharge injunction.

*Discussion*

Under the 1898 Act, a debtor's discharge enjoined "all creditors whose debts [were] dischargeable from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the [debtor]." See Bankr. Act 1898, § 14(f), 11 U.S.C. §14(f) (Repealed 1979). Civil contempt is the normal sanction for violations of the discharge injunction. 4 Collier, 524.02[2][c] (16th Ed. Rev.) (Citing Insurance Co. of N. Amer. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.), 118 F.3d 1056 (5th Cir. 1997)). Damages may be appropriate in instances where the creditor has willfully violated the discharge injunction. Id. A creditor's actions in violation of the discharge injunction are willful if the creditor knew the discharge injunction was invoked and intended the actions that violate the discharge injunction. Poole v. U.B. Vehicle Leasing, Inc. (In re Poole), 242 B.R. 104 (Bankr. N.D. Ga. 1999) (Adopting the test in Hardy v. IRS (In re Hardy), 97 F.3d 1384 (11th Cir. 1996) for willfulness concerning violation of the automatic stay.).

There appears to be some disagreement among the courts regarding a plaintiff's burden of proof in demonstrating a violation of the discharge injunction.

> The Eleventh Circuit Court of Appeals has held that the willfulness of the violation must be proved by clear and convincing evidence. See In re Arnold, [206 B.R. 560, 567 (Bankr. N.D.Ala. 1997)], citing [Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1545 (11th Cir.1996)]. There is no suggestion in the caselaw that the Fourth Circuit Court of Appeals would require such a measure of proof (as opposed to the usual measure of a preponderance of the evidence).

In re Cherry, 247 B.R. 176 (Bankr. E.D. Va. 2000). Also see In re Adams, 2010 WL 2721205 (2010) (Applying the preponderance of the evidence standard.). The elements are presented in the conjunctive. The burden of proof is on the Plaintiff to demonstrate by a preponderance of the evidence that the Defendant knowingly and wilfully violated the discharge injunction. The Plaintiff must show that the Defendant knew that Discharge Order had been entered *and* did not know that the Debt was excepted from that order.

The time since the Plaintiff received her discharge in the 1978 Case to the present, may be divided into five periods: (1) 1983 to 1998 when the Plaintiff did not own the Debt ("the Pre-Ownership Period") ; (2) 1998 to August 10, 2004 during which time the Plaintiff did not attempt to collect the Debt ("the Inquiry Period"); (3) August 10, 2004 to May 18, 2007 during which time the Defendant attempted to collect the Debt ("the Collection Period"); (4) May 18, 2007 to November 19, 2008 ("the Litigation Period") ; and (5) November 19, 2008 to the present ("the Post-Judgment Period").

A review of the facts reveals that the Defendant only acted in violation of the discharge injunction when it had overwhelming reason to believe that the Discharge Order was not applicable to the Debt. During no time did the Defendant commence or continue collection efforts when it knew or believed that the discharge injunction was invoked with respect to the Debt.

During the Pre-Ownership Period, the Defendant did not own title to the Debt and did not commence or continue an act to collect the Debt. The Defendant did not violate the discharge injunction during this period.

During the Inquiry Period, the Defendant attempted to ascertain whether the Plaintiff had

filed a petition in bankruptcy. While the Defendant evidently had a notation on its records that the Plaintiff had filed bankruptcy, it had no information concerning the case. The 1998 Letter clearly indicates that the Defendant was seeking to ascertain if the Debt was a dischargeable debt. The Defendant noted that "[i]t is necessary that we receive a copy of your bankruptcy discharge/dismissal order to determine the status of your debt to the Federal Government." The 1998 Letter also informs the debtor that the debt may not have been discharged in bankruptcy even if the debtor received a discharge. The Plaintiff did not respond to the letter.

In June of 2002, and again in January of 2004, the Defendant conducted a database search in an attempt to ascertain the particulars of the 1979 Case. The search revealed no relevant information regarding the 1979 Case. So, as of January 2004, the Defendant had no knowledge concerning the status of the 1979 Case despite efforts to attain such information from both the Plaintiff and the available records.[6]

The Defendant made no attempt to collect the Debt during this time. On the contrary, the Defendant contacted the Plaintiff seeking all information concerning whether the Debt had in fact been discharged. Further, the Defendant provided the Plaintiff with a form which the Plaintiff could have used to not only state the reason supporting her belief that the Debt was discharged, but also could have used to initiate a hearing on the record, over the telephone, or in person, through which she could have made her case to the Defendant. The Defendant did not violate the discharge injunction during this period.

During the Collection Period, the Defendant engaged in acts to collect the Debt. The

---

[6] Such an inquiry would have been necessary because certain student loans were dischargeable if they would impose an undue hardship, or if payments were made for five years under the 1898 Act (See Bankr. Act, § 17, sub a, 11 U.S.C. §35(a)(9)) or if payments were made for seven years under the 1978 Code (see former 11 U.S.C. § 523(a)(8) and ,e.g., In re Eiland, 170 B.R. 370 (Bankr. N.D.Ill. 1994)).

Defendant, however, did not know, and could not have known, that the Debt had been discharged during this period of time. We begin with the fact that the Defendant did not believe that the Debt had been discharged. This fact is supported by the evidence. The 1998 Letter indicates that the Defendant did not know whether the Debt had been discharged. Thereafter, the Defendant became aware of the 1979 Case and the Plaintiff's assertion that the Debt was discharged because the petition was filed during the Gap Period. It is clear, however, that the Defendant believed that the applicable law concerning discharge of student loans during the Gap Period did not provide for the discharge of the Debt.

First, the Zaun Letter evidences that the Defendant was aware of the only decision on the issue that had issued from a bankruptcy court in the Western District of Virginia. The Zaun Letter cited the 1981 Sourthard opinion which was the only opinion in the District on the issue. Additionally, the Zaun Letter cited the only two circuit extant opinions on the issue, Wisconsin Higher Educ. Aids Board v. Lipke, 630 F.2d 1225 (7th Cir. 1980) and New York Higher Educ. Svcs Corp. V. Andamo, 619 G.2d 216 (2nd Cir. 1980), cert.denied, 449 U.S. 843 (1980). Both of these Circuit Court opinions held that student loan debts owed by debtors who filed during the Gap Period were non-dischargeable.

Nor was the Defendant's belief unreasonable. On the other side of the ledger were the assertions of the Plaintiff and a non-attorney friend of the Plaintiff, who asserted, without authority, that the Debt was discharged. Further, when the United States District Court affirmed the decision of this court holding that the Plaintiff's Debt was discharge during the 1978 Case, it recognized that it was in the minority of courts that considered the issue. It can only be concluded that the Defendant truly believed that the Debt was not discharged by the Discharge

Order.  It must also be concluded that the Defendant had a sound legal basis for that belief.  Consequently, it is concluded that the Defendant did not know that the Debt was discharged and subject to the discharge injunction invoked by the Discharge Order.

At the beginning of the Litigation Period and through the Post-Judgment Period to the present, the Defendant made no attempt to collect the Debt.  In fact, the Defendant has returned all monies, with interest, that had been previously collected.

Finally, given the state of the relevant law during the Collection Period, this court believes that a judgment for the Plaintiff would be tantamount to imposing a civil ex post facto rule of law upon the Defendant.  Ex post facto laws are statutes that make an act punishable as a crime when the act was not illegal when committed.  Article I, section 10, clause 1 of the Constitution provides that no state shall pass any ex post facto law; Article I, section 9, clause 3 imposes the same prohibition upon the federal government. The Supreme Court has determined that these clauses only prohibit the imposition of criminal laws ex post and do not apply to statutes dealing with civil matters. Nevertheless, under certain circumstances the retroactive application of civil law may violate the Contract or Due Process Clauses of the Constitution. While the Constitutional ban on ex post facto laws operates solely as a restraint on legislative power and has no application to changes in the law made by judicial decision, this court is loathe to apply a change in the applicable law retroactively, when the defendant could not have reasonably foreseen that change.

### *Conclusion*

When the Defendant acquired ownership of the Debt, it contacted the Plaintiff through the 1998 Letter but received no response.  Over a six-year period it attempted to gather facts that

would permit it to determine whether the Debt was dischargeable.  Before offsetting the Plaintiff's income tax refund in 2004, the Defendant again contacted the Plaintiff with the Request for Review, but again received no response.  When the Plaintiff finally contacted the Defendant seven years after the Defendant's first attempt to resolve the matter, the Defendant correctly explained that its position was consistent with the weight of judicial authority.  When, two years later, the Plaintiff hired an attorney and took steps to reopen the 1979 Case, the Defendant cease all collections immediately.  At no time did the Defendant knowingly and wilfully violate the Discharge Order.

An appropriate judgment shall issue.

Upon entry of this memorandum the Clerk shall forward copies to David H. Cox, Esq., and James Joyce, Esq.

Entered on this  1st  day of July, 2011.

William E. Anderson
United States Bankruptcy Judge